**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | | |
|---|---|---|
| ERICA SEXTON STEELE, in her capacity as | * | |
| Administrator Ad Litem of the Estate of | * | |
| Darrell Levonne Steele, | * | |
| | * | NO. _____ |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| IVO AARON MILLER, D.D.S. and | * | |
| ASSOCIATES IN ORAL AND | * | |
| MAXILLOFACIAL SURGERY, P.C., a | * | |
| Tennessee professional corporation, | * | |
| | * | |
| Defendants. | * | |

---

**COMPLAINT, T.C.A. § 29-26-121 COMPLIANCE STATEMENT, JURY DEMAND AND NOTICE OF MEDICAL EXPENSES PURSUANT TO T.C.A. § 24-5-113(b)**

---

Plaintiff, through undersigned counsel, alleges as follows:

### PARTIES

1. Plaintiff, Erica Sexton Steele ("Ms. Steele"), is a resident of Ringgold, Georgia.

2. Ms. Steele's husband, Darrell Levonne Steele, Deceased ("Mr. Steel') was a resident of Ringgold, Georgia when he died on May 24, 2023.

3. Ms. Steele brings this action in her capacity as Administrator Ad Litem of the Estate of Mr. Steele, having been so appointed by the Hamilton County, Tennessee Chancery Court in Case No. 24-P-343.

4. Ms. Steele brings this action pursuant to the laws of the State of Tennessee governing wrongful death and survival actions, including without limitation T.C.A. § 20-5-101 et seq., compensation for all damages suffered by Mr. Steele from the date of injury as described

herein to the date of death, and all damages suffered by his estate and next of kin, including, without limitation, damages recoverable for the loss of the pecuniary value of his life.

5.      Defendant Ivo Aaron Miller, D.D.S ("Dr. Miller") is a dentist and oral surgeon who resides in Hamilton County, Tennessee.

6.      Defendant Associates in Oral and Maxillofacial Surgery, P.C. ("AOMS") was at all relevant times a professional corporation which was incorporated under the laws of the State of Tennessee.

7.      AOMS's principal place of business was at all relevant times the Center for Oral Facial and Implant Surgery ("COFIS"), located at 6015 Shallowford Road in Chattanooga, Hamilton County, Tennessee.

8.      Dr. Miller has been at all relevant times a shareholder and employee of AOMS.

9.      Dr. Miller has at all relevant times maintained his office at COFIS and performed outpatient surgery at COFIS.

**JURISDICTION**

10.     The District Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332(a), because: (a) there is complete diversity of citizenship between Ms. Steele in her representative capacity, on the one hand, and Dr. Miller and AOMS, on the other hand; and (b) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.[1]

---

[1] 28 U.S.C.A. § 1332(c)(2) provides that the administrator of an estate shall be for purposes of the removal statute is deemed to be a citizen only of the same state in which the decedent resided.

2

11.     Venue is proper in the Eastern District of Tennessee, because the wrongful acts and omissions giving rise to this action occurred in this District.

**FACTUAL BACKGROUND**

12.     Mr. Steele was referred to Dr. Miller by another dentist for extraction of nine teeth.

13.     Dr. Miller met with Mr. Steele on March 13, 2023.

14.     It was Dr. Miller's responsibility to formulate a surgical plan which incorporated a safe means of anesthesia.

15.     Common anesthesia techniques for the removal of teeth include local anesthesia, IV conscious sedation (which can range from light to moderate to deep) and general anesthesia.

16.     The settings in which such surgeries are commonly performed include inpatient facilities (e.g., a hospital) and outpatient facilities (e.g. an oral surgeon's office).

17.     Depending on the circumstances, anesthesia in such surgeries may be provided by an anesthesiologist, C.R.N.A. or the oral surgeon performing the operation.

18.     When IV sedation is utilized, the patient's airway is typically not protected (e.g. by intubation).  Instead, the patient's natural, unassisted breathing is relied upon.

19.     Drugs used for IV sedation include opioids, benzodiazepines and anesthetics, all of which can depress the respiration.

20.     It is somewhat unpredictable the extent to which the same dosages of drugs may cause differing degrees of sedation in seemingly similar patients.

21. In evaluating the safety of IV sedation, it is the surgeon's responsibility to identify risk factors for respiratory compromise, including the potentiality of airway obstruction and respiratory arrest.

22. Dr. Miller learned at the March 13, 2023 appointment that Mr. Steele had two conditions which, in the case of IV sedation, were risk factors for respiratory depression, airway obstruction and respiratory arrest, namely, obstructive sleep apnea ("OSA") and obesity.

23. It was Dr. Miller's responsibility to conduct a focused pre-anesthetic evaluation of Mr. Steele to stratify his risk of respiratory complications.

24. Dr. Miller failed to perform these physical examinations. Had he done so, he would have discovered one or more conditions which, especially in combination with Mr. Steele's OSA and obesity, rendered it unacceptably dangerous to proceed with Dr. Miller's anesthesia plan, which was to perform the surgery at COFIS under moderate conscious sedation, with Dr. Miller performing the surgery and simultaneously administering the anesthesia.

25. The March 13, 2023 chart entries are devoid of any indication that Dr. Miller discussed the risks associated with IV sedation in Mr. Steele's case.

26. The extraction was scheduled for March 28, 2023.

27. The record reflects that Dr. Miller failed to avail himself of a second opportunity to conduct the necessary physical examination which he had not conducted on March 13, 2023.

28. The anesthesia record indicates that Mr. Steele was seated in the operating room chair at 10:03 a.m., that the anesthesia was begun at 10:15 a.m., that a timeout was taken at 10:27 a.m. and that the surgery was commenced at 10:32 a.m.

29. The anesthesia record indicates that the IV sedation drugs utilized included Fentanyl (opiate), Versed (benzodiazepine) and Propofol (anesthetic agent), the same drugs used

4

by Dr. Miller for placing patients under general anesthesia, in which they are asleep and unarousable.

30. The dosages administered by Dr. Miller, particularly in light of Mr. Steele's risk factors, made it reasonably foreseeable that Mr. Steele would become deeply (versus moderately) sedated or reach a state of general anesthesia, either of which would place Mr. Steele at an unacceptably high risk of respiratory obstruction and/or arrest.

31. The anesthesia record and Dr. Miller's notes thereon seem to indicate that at some point in close proximity to the commencement of the surgery (10:32 a.m.), it was noticed that Mr. Steele's airway had become obstructed and he had stopped breathing.

32. The record further indicates attempts to improve or re-establish respirations by use of a catheter placed through Mr. Steele's nose and into his airway and by bag valve mask.

33. The record further indicates that at some point in proximity to Mr. Steele's respiratory arrest, the rescue drugs Narcan and Romazicon were administered to reverse the sedative effects of the Fentanyl and Versed.

34. The record further reflects that the surgery was apparently suspended at some point prior to 10:39 a.m., at which time post-anesthesia care was commenced.

35. The post-anesthesia care record reflects that discharge criteria (respirations, circulation, activity, neurological status and oxygen saturation) were assessed upon commencement of post-anesthesia care (10:39 a.m.) and at 15, 30, 45, 60 and 90 minutes thereafter – the 90-minute mark would have been reached at 12:09 p.m. However, the record reflects that Mr. Steele was discharged at 11:20 a.m., which was too soon after it became necessary to administer a second round of reversal drugs.

5

36.     Moreover, the oxygen saturation discharge criteria utilized by Dr. Miller required an oxygen saturation of greater than 92% on room air.  However, the last documented oxygen saturation recorded was 92% on 3 liters of supplemental oxygen.

37.     Mr. Steele was discharged home before he met discharge criteria.

38.     Ms. Steele was Mr. Steele's "driver."  She planned to take him home in their pickup truck.  However, Mr. Steele remained so sedated that he required a wheelchair to leave COFIS.   Due to his level of sedation, it was not possible to transfer Mr. Steele to the pickup truck.  Therefore, Mr. Steele was transferred home in a van equipped to transport wheelchair bound persons.

39.     Mr. Steele's condition deteriorated, and at approximately midnight on March 29, 2023, he was taken to Parkridge North Emergency Room where he was diagnosed with aspiration pneumonia.  He was transferred by ambulance to Parkridge East Hospital, where he was an inpatient from March 30, 2023 through April 8, 2023.  He was then transferred by ambulance to Parkridge Medical Center on April 8, 2023.

40.     He was then transferred by air ambulance to Tristar Centennial Medical Center in Nashville on April 9, 2023.  Mr. Steele died at Tristar Centennial Medical Center on May 24, 2023.

41.     The Death Certificate lists the cause of death as hypoxic hypercarbic respiratory failure, secondary to aspiration pneumonia.

42.     To a reasonable degree of medical certainty, Mr. Steele's death was caused by aspiration pneumonia which would not have occurred absent the  negligent and reckless acts and omissions of Dr. Miller in regard to his selection of the anesthetic, his operative management and pre-mature discharge of Mr. Steele from COFIS when further medical care was indicated.

6

## FIRST CLAIM FOR RELIEF

### (March 13, 2023 - Dr. Miller – Negligence)

43. Plaintiff incorporates by reference all allegations set forth above.

44. Dr. Miller departed from recognized standards of care in regard to his workup of Mr. Steele on March 13, 2023, by failing to perform and document an acceptable physical examination of Mr. Steele which would have revealed additional risk factors for the respiratory compromise which in fact occurred. Dr. Miller carelessly formulated a treatment plan which included moderate IV sedation, when he knew or should have known that he did not possess sufficient information to safely implement that plan.

45. Had the surgery been performed at a facility equipped to provide a higher level of care and/or had a safer anesthesia plan been instituted, Mr. Steele would not have aspirated and would not have died.

46. In the alternative, had an anesthesia plan been followed which met the standard of care, Mr. Steele would not have died, even if he had aspirated.

47. As a proximate result of these and other negligent and reckless acts and omissions to be discovered, Dr. Miller's treatment plan was unreasonably dangerous, should not have been implemented and was a proximate cause of Mr. Steele's death.

## SECOND CLAIM FOR RELIEF

### (March 13, 2023 - Dr. Miller – Failure to Obtain Mr. Steele's Informed Consent to Moderate IV Sedation)

48. Plaintiff incorporates by reference all allegations set forth above.

49. It was Dr. Miller's responsibility to inform Mr. Steele, in a manner commensurate with the standard of care, of the reasonable options for anesthesia and the risks and benefits of each.

7

50. The anesthesia plan formulated by Dr. Miller was not among the reasonable available options. Had Dr. Miller explained to Mr. Steele the risks and benefits of the plan formulated by Dr. Miller, neither Mr. Steele, nor any other reasonable person, would have agreed to that anesthesia plan.

## THIRD CLAIM FOR RELIEF

### (March 28, 2023 - Dr. Miller – Negligence)

51. Plaintiff incorporates by reference all allegations set forth above.

52. Dr. Miller departed from recognized standards of care in regard to his preoperative examination of Mr. Steele on March 28, 2023. In addition to other negligent and reckless acts and omissions, Dr. Miller failed to avail himself of a second opportunity to perform the necessary physical examination which would have revealed circumstances rendering it unreasonably dangerous to utilize moderate IV sedation under the circumstances of Mr. Steele's case. Again, had Dr. Miller performed necessary physical examinations, he would have discovered circumstances which he should recognize rendered his IV sedation plan unacceptably dangerous in the office setting, with Dr. Miller simultaneously performing the surgery and administering the anesthesia.

## FOURTH CLAIM FOR RELIEF

### (March 28, 2023 - Dr. Miller – Failure to Obtain Mr. Steele's Informed Consent to Moderate IV Sedation)

53. Plaintiff incorporates by reference all allegations set forth above.

54. For essentially the same reasons set forth above describing Dr. Miller's failure to obtain Mr. Steele's informed consent, he likewise failed to obtain Mr. Steele's informed consent on March 28, 2023.

8

## FIFTH CLAIM FOR RELIEF

### (Dr. Miller's Negligence on and After March 28, 2023
### Premature Discharge and Failure to Render Care After Discharge)

55.     Plaintiff incorporates by reference all allegations set forth above.

56.     For reasons set forth above and those to be discovered, Dr. Miller negligently and recklessly failed to administer the anesthesia in a reasonable manner, thereby negligently causing Mr. Steele's airway obstruction and respiratory arrest and, further, he failed to recognize the obstruction and arrest in a reasonably timely manner, causing or contributing to cause Mr. Steele's aspiration.  Further, he discharged Mr. Steele from COFIS when Mr. Steele had not recovered sufficiently to render it safe to do so.  In addition to other facts and circumstances, Dr. Miller discharged Mr. Steele too soon after the second administration of reversal drugs and before he otherwise had reached discharge criteria.

57.     Furthermore, Dr. Miller negligently and recklessly failed to evaluate and treat Mr. Steele when it was learned that Mr. Steele remained sedated for an unreasonable period of time after the surgery.  The standard of care required surveillance and care after the resuscitation. Had such care been rendered, Mr. Steele would likely not have deteriorated to the point he was at when he arrived at Parkridge North emergency room.

## SIXTH CLAIM FOR RELIEF

### (AOMS's Negligent Failure to Provide a Safe Environment With
### Appropriately Educated and Trained and Participants in the Surgery)

58.     Plaintiff incorporates by reference all allegations set forth above.

59.     Given the known circumstances of the surgery, including without limitation, the apparently inaccurate, jumbled state of the anesthesia record, and other facts and circumstances to be discovered, it appears that Dr. Miller and the staff participating in the

9

surgery lacked the skill and knowledge required by T.C.A. § 63-5-101, et seq. and Tenn. Comp. R. & Riggs. R. 0460-01-.01, et seq. and their lack of knowledge and training was a proximate cause of Mr. Steele's death.

## SEVENTH CLAIM FOR RELIEF

### (AOMS - Respondeat Superior)

60.     Plaintiff incorporates by reference all allegations set forth above.

61.     All participants in Mr. Steele's care were employees, agents, or otherwise subject to the control of AOMS, such that AOMS is legally responsible for their negligent and reckless acts and omissions pursuant to the doctrine of respondeat superior.

## DAMAGES

62.     Plaintiff is entitled to recover on behalf of Mr. Steele's estate:  medical expenses; compensation for pain and suffering; compensation for lost wages and income; lost time; and funeral expenses. In addition, Mr. Steele's estate is entitled to recover economic and non-economic components of the pecuniary value of his life sustained by his next-of-kin, including loss of consortium and loss of Mr. Steele's future earnings.

## PRESUMPTION OF REASONABLENESS OF MEDICAL EXPENSES

63.     Plaintiff incorporates by reference all allegations set forth above.

64.     Pursuant to T.C.A. § 24-5-113(b), Plaintiff attaches hereto as Exhibit 1 an itemization of reasonable medical expenses incurred for the care and treatment of Mr. Steele from his date of injury to the date of his death.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

10

## COMPLIANCE WITH T.C.A. § 29-26-121(a) and (b)

### Service of Notice Letter by Hand-Delivery

1. Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to Dr. Hal Jones – Registered Agent on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for Dr. Jones.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

2. Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to Dr. Ivo Aaron Miller on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for Dr. Miller.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

3. Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to Margaret T. Mynatt, R.N. on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for Margaret T. Mynatt.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

4. Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to Anthonyna S. Valcarcel, RDA on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015

11

Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for Anthonyna S. Valcarcel.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

5.      Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to R. Moore on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for R. Moore.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

6.      Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to Amber Nicole Quarles, RDA on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for Amber Nicole Quarles.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

7.      Plaintiff has complied with T.C.A. §29-26-121(a) by having hand-delivered a Notice of Claim letter with attached HIPAA-compliant authorizations to Allison Renee Ballard, R. N. on March 27, 2024, at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was received by front desk receptionist, Helena Eilersen, whose job function included receiving patients and/or deliveries for Allison Renee Ballard.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 2.

### Service of Notice Letter by Mail

8.      As verified by Certificates of Mailing, Plaintiff has further complied with T.C.A.

§29-26-121(a) by having sent by certified mail on March 27, 2024, a Notice of Claim letter with attached HIPAA-compliant authorizations to:

(a) Hal Jones, DDS – Registered Agent at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, who on March 27, 2024, was listed as the registered agent for service of process for Associates in Oral & Maxillofacial Surgery on the Tennessee Department of Health's website at his then current business address. See Affidavit of Linda G. Bennett, attached hereto as Exhibit 3.

(b) Ivo Aaron Miller, DDS, FACS at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was on March 27, 2024, at address listed for Dr. Miller on the Tennessee Department of Health's website and his then current business address. See Affidavit of Linda G. Bennett, attached hereto as Exhibit 4.

(c) Margaret T. Mynatt, R.N. at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was on March 27, 2024, at address listed on the Tennessee Secretary of State's website and her then current business address. See Affidavit of Linda G. Bennett, attached hereto as Exhibit 5.

(d) Anthonyna S. Valcarcel, RDA at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was on March 27, 2024, at address listed on the Tennessee Secretary of State's website and her then current business address. See Affidavit of Linda G. Bennett, attached hereto as Exhibit 6.

(e) R. Moore at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was on March 27, 2024, at address listed on the Tennessee Secretary of State's website and her then current business address. See Affidavit of Linda G. Bennett, attached hereto as Exhibit 7.

(f)  Amber Nicole Quarles, RDA at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was on March 27, 2024, at address listed on the Tennessee Secretary of State's website and her then current business address.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 8.

(g)  Allison Renee Ballard, R. N. at Associates in Oral & Maxillofacial Surgery, P.C., 6015 Shallowford Road, Chattanooga, Tennessee 37421-1688, which was on March 27, 2024, at address listed on the Tennessee Secretary of State's website and her then current business address.  See Affidavit of Linda G. Bennett, attached hereto as Exhibit 9.[2]

WHEREFORE, Plaintiff prays that judgment enter in her favor as Administrator Ad Litem and against Dr. Miller and AOMS, jointly and severally for all damages above specified, plus all costs recoverable by statute or rule; and such other relief as the Court deems just and proper.

Respectfully submitted,

Ira M. Long, Jr. – BPR No. 22411
IRA LONG & ASSOCIATES, PLLC
1401 Williams Street, Suite 230
Chattanooga, Tennessee  37408
Telephone: (423) 756-5900
Facsimile: (423) 756-5909
E-mail: ira@iralonglaw.com
ATTORNEYS FOR PLAINTIFF

---

[2] Attached hereto as Exhibit 10 see the Affidavit of Brenda Walters for the hand-delivery of letters dated April 22, 2024, with attachments thereto to the same individuals named in 9 (a)-(g) hereinabove; further, attached hereto as the Collective Attachment "A" to Exhibit 10 are copies of the letters and the attachments thereto which were hand-delivered on April 22, 2024; finally, attached hereto as Attachment B to Exhibit 10 is the Receipt signed by Stephanie Slegl at Associates in Oral and Maxillofacial Surgery, P.C. for those letters referenced in this footnote.

14