**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| ERICA SEXTON STEELE, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:24-cv-251 |
| | ) | |
| v. | ) | |
| | ) | Judge Atchley |
| IVO AARON MILLER, DDS, *et al.*, | ) | Magistrate Judge Dimitru |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendants' Second Motion for Partial Summary Judgment [Doc. 83] and Motion for Summary Judgment on Liability [Doc. 80]. For reasons that follow, the Second Motion for Partial Summary Judgment [Doc. 83] will be **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Summary Judgment on Liability [Doc. 80] will be **DENIED AS MOOT**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants have put almost no evidence into the record as to the basic facts of the case, and the Court therefore draws from the Second Amended Complaint [Doc. 37]. Plaintiff Erica Sexton Steele, a Georgia resident, brings this health care liability action as administrator ad litem of the estate of her late husband, Darrell Levonne Steele. [*Id.* at ¶¶ 1, 4]. Defendant Ivo Aaron Miller, D.D.S., is an oral surgeon in Tennessee, and Defendant Associates in Oral and Maxillofacial Surgery, P.C. ("AOMS") is a Tennessee professional corporation. [*Id.* ¶¶ 6–10]. The Court has jurisdiction under 28 U.S.C. § 1332(a).

On March 28, 2023, the late Mr. Steele underwent oral surgery, which was performed under IV sedation. [Doc. 37 at ¶¶ 6, 13, 27]. He suffered a roughly 20-minute respiratory arrest

during the procedure. [*Id.* at ¶ 30]. No emergency services were called, and he was only revived after several doses of "reversal drugs," including Narcan. [*Id.* at ¶ 31-33]. Though still heavily sedated, he was then discharged in a wheelchair with assistance from a friend. [*Id.* at ¶ 42]. His condition worsened and he was taken to the emergency room the next day, where he was diagnosed with aspiration pneumonia. [*Id.* at ¶ 56]. Mr. Steele was transferred several times, but remained hospitalized until his death on May 24, 2023. [*Id.* at ¶ 59].

Erica Sexton Steele brought this health care liability action as administrator ad litem of Mr. Steele's estate on July 25, 2024. [Doc. 1]. Her Second Amended Complaint [Doc. 37] alleges that Mr. Steele's death was "directly and proximately caused by the negligent, grossly negligent and reckless acts and omissions" of Dr. Miller. [*Id.* at ¶ 66]. Relevant here, the SAC seeks punitive damages and appears to assert that Tennessee's statutory cap on noneconomic damages does not apply due to alleged errors in the medical record. [Doc. 37 at 12]; *see* Tenn. Code Ann. §§ 29-39-102, 104.

Defendants now move for partial summary judgment as to Plaintiff's claims for punitive damages; lack of informed consent; failure to establish adequate policies and provide a safe surgical setting and appropriately trained staff as to AOMS; and negligence per se. [Doc. 83]. Defendants also move for judgment that alleged errors in the medical record do not implicate the exception contained in T.C.A. § 29-39-102(h)(2), and thus any recovery is subject to the normal limitations on noneconomic damages in Tennessee. [*Id.*].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary

judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). They may discharge this burden in one of two ways: either by producing evidence that demonstrates the absence of a genuine issue of material fact, or "by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (punctuation omitted). A party asserting the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76

(6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### a. Punitive Damages

Tennessee substantive law governs the availability of punitive damages, and federal law governs the summary judgment procedure. *Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 901 (6th Cir. 2010). Tennessee law permits punitive damages only where "the claimant proves by clear and convincing evidence that the defendant . . . acted maliciously, intentionally, fraudulently or recklessly." T.C.A. § 29-39-104(a)(1); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Such damages are confined to "the most egregious of cases." *Hodges*, 833 S.W. 2d at 901. Plaintiff proceeds on a theory of recklessness. A defendant acts recklessly when he "is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.*

#### i. Positions of the Parties

Defendants contend Plaintiff "is required to have expert testimony to prove that Defendants' actions constituted a gross deviation from the standard of case such as would rise to the level of recklessness in order to maintain a claim for punitive damages." [Doc. 83 at 3]. Without it, Defendants say, "the jury would have no evidence upon which to draw the inference of recklessness or a gross deviation from the standard of care." [Doc. 100 at 1–2]. Defendants filed

Plaintiff's original expert report [Doc. 84], but do not discuss or analyze it at all. Relying on a single Davidson County Circuit Court case, they simply argue the disclosed testimony "does not support the argument that Dr. Miller was either grossly negligent or reckless in his treatment planning of Mr. Steele's office-based anesthesia." [*Id.*].

Plaintiff responds that Tennessee law imposes no such requirement in healthcare liability actions. [Doc. 97]. Rather, expert proof is generally required as to the standard of care and whether a defendant's conduct deviated from that standard. [*Id.* at 2]. If liability is established, the jury must then decide recklessness based on that same standard of care, asking whether there was a "substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care." [*Id.*]; *see Hodges*, 833 S.W.2d at 901. In their reply, Defendants argue Plaintiff cannot rely on *Hodges* for the proposition that recklessness is a jury question, because *Hodges* was not a medical malpractice case and did not involve a requirement of expert proof. [Doc. 100 at 1].

Initially, it is not entirely clear how Defendants believe the expert testimony/report is deficient, because they never really say. They only argue that it does not support a finding of recklessness.[1] As the Court reads it, Defendants are (i) arguing that Tennessee law requires expert testimony to prove recklessness for punitive damages in a health care liability action; and (ii) summarily challenging the sufficiency of Plaintiff's expert evidence based on that proposition. The

[1] To the extent Defendants contend an expert must explicitly opine that conduct was "reckless," it is not clear that he could. Experts are not typically permitted to give opinions that are in fact legal conclusions, and in other contexts, courts have found that an expert does exactly that when he opines that conduct was "reckless." *See Allen v. Cam's Transport Co.*, 2024 WL 3970897, at *6 (E.D. Tenn. June 24, 2024) (expert's opinion that driver "was reckless" was an inadmissible legal conclusion); *M.T. v. Saum*, 3 F. Supp. 3d 617, 626-27 (W.D. Ky. 2014) ("Testimony that a defendant acted 'recklessly' in essence tells the jury what result to reach on certain elements of the plaintiffs' claims and is accordingly an inadmissible legal conclusion." (cleaned up)).

effort fails twice over. Tennessee law does not appear to impose a different evidentiary standard for punitive damages in a healthcare liability action. Even if it did, Defendants have not carried their summary judgment burden of demonstrating the absence of evidence to support Plaintiff's punitive damages claim.

#### ii. Tennessee Law does not Require Expert Proof of Recklessness

Defendant's argument merges two inquiries that are distinct under Tennessee law. The Tennessee Health Care Liability Act governs the underlying negligence claim by requiring expert proof of the recognized standard of care, the defendant's deviation from that standard, and causation. T.C.A. § 29-26-115(a), (b). The availability of punitive damages, however, is governed by T.C.A. § 29-39-104, which requires clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. T.C.A. § 29-39-104(a)(1). The Tennessee Supreme Court defined recklessness in *Hodges*, and that definition applies regardless of the underlying cause of action. Indeed, Tennessee courts have applied the *Hodges* recklessness standard in health care liability cases. *See Beal*, 408 F. App'x at 906. Neither statute provides that the availability of punitive damages turns on the nature of the plaintiff's expert proof. Rather, Tennessee decisions applying § 29-39-104 evaluate whether the record, taken as a whole, contains clear and convincing evidence of recklessness.

The Court has not identified any decision of the Supreme Court of Tennessee or the Tennessee Court of Appeals that has directly addressed this issue. But plenty of opinions discuss punitive damages in the context of healthcare liability claims without requiring expert proof of recklessness. For example, *McLemore v. Elizabethton Medical Investors, Ltd. Partnership*, 389 S.W.3d 764 (Tenn. Ct. App. 2012), was a medical malpractice action tried against a nursing home. The jury found by clear and convincing evidence that the defendant's conduct was reckless. *Id.* at

774. Conducting the review required by *Hodges*, the trial court concluded that "material evidence exists from which a jury could conclude by clear and convincing evidence that Life Care acted with reckless disregard for the safety of and well-being of [the resident]," and the Court of Appeals affirmed. *Id.* at 782. In determining whether the evidence supported the jury's finding, the court examined the defendant's knowledge, conduct, and the surrounding circumstances. *Id.* It did not focus on whether any expert characterized the conduct as reckless or as a gross deviation from the standard of care. *Id.*

Federal courts applying Tennessee law have taken the same approach. In *Jones v. Walgreen Co.*, the court denied summary judgment on a claim for punitive damages because deposition testimony, federal and state regulations, and questions regarding the defendant's policies created "ample disputes of material fact." 2007 WL 9782918, at *8 (M.D. Tenn. Aug. 6, 2007). Other Tennessee decisions are to the same effect. *See Smartt NHC Healthcare v. McMinnville, LLC*, 2009 WL 482475, at *27 (Tenn. Ct. App. Feb. 24, 2009) (understaffing evidence sufficient to support a finding of recklessness); *Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 2018 WL 3740565, at *53 (Tenn. Ct. App. Aug. 6, 2018) (finding there was material evidence for the jury to conclude that the defendant "consciously disregarded a substantial and unjustifiable risk" constituting "a gross deviation from the standard of care"). Even when punitive damages are ultimately unavailable, Tennessee courts evaluate the evidentiary record as a whole, rather than searching for an expert's characterization. *See Beal v. Walgreen Co.*, 2009 WL 10665189, at *6 (W.D. Tenn. Mar. 3, 2009), *aff'd in part sub nom*. *Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898 (6th Cir. 2010) (granting summary judgment after concluding evidence showed negligence and did not fall into the category "of the most egregious cases to which the Tennessee Supreme Court limits punitive damages."). So it is simply not the case that "[w]ithout expert

testimony, the jury would have no evidence upon which to draw the inference of recklessness or a gross deviation from the standard of care." [Doc. 100 at 2].

Under Tennessee law, a plaintiff seeking punitive damages has to prove her underlying claim and also present "additional proof of a required mental state under Tennessee law." *Beal v. Walgreen Company*, 408 F. App'x 898, 903 n.3 (6th Cir. 2010). In this case, Plaintiff must have expert evidence to support her claim for medical malpractice. But the evidentiary requirements for that claim do not transfer to her punitive damages demand. Though related, the inquiries are separate.

None of this diminishes the demanding nature of the recklessness standard. A deviation from the applicable standard of care, standing alone, establishes only negligence. Recklessness requires substantially more proof: clear and convincing evidence that the defendant consciously disregarded a substantial and unjustifiable risk. Tenn. Code Ann. § 29-39-104(a)(1); *Hodges*, 833 S.W.2d at 901; *see Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 206 (Tenn. Ct. App. 2008) (conduct must reach "a substantially higher level than ordinary negligence"). The point is simply that Tennessee courts determine whether this heightened standard has been met by examining the entire evidentiary record.

Defendants' reliance on *Jacobs v. Shumacher* does not compel a different result. 2013 Tenn. Cir. LEXIS 317 (Tenn. Cir. Ct. Davidson County Apr. 11, 2013). *Jacobs* is one-page order of a circuit court, and, as best the Court can discern, has never been cited by another court. There, the court concluded that the plaintiff was "required to have expert testimony that Defendant's actions constituted a gross deviation from the standard of care such as would rise to the level of recklessness in order to maintain a claim for punitive damages and that that proof must be shown by clear and convincing evidence." *Id.* at *2. However, the court's analysis was directed to the

proof in that case, specifically "the testimony of Dr. Elster *which was relied on by Plaintiff to meet her burden*." *Id.* (emphasis added). Thus, *Jacobs* does not persuade the Court to depart from the approach reflected in the Tennessee appellate decisions discussed above, which evaluate whether the record as a whole contains sufficient evidence to support a finding of recklessness.

**iii. Defendants Have Not Carried Their Burden on Summary Judgment**

Defendants' motion as to punitive damages fails for another reason. As the moving party, Defendants have "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A litigant can discharge that burden in one of two ways: by citing materials in the record that negate an element of the claim, or by showing, even without citing to the record, "that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to that fact." Fed. R. Civ. P. 56(c)(1)(B) advisory committee's note to 2010 amendment; *see also Celotex Corp.*, at 325 (a movant may "point[] out…that there is an absence of evidence to support the nonmoving party's case."). But this second route requires more than merely asserting that the non-movant lacks sufficient evidence to support her claim. "[I]n most cases . . . the movant cannot appropriately be credited with having made this [initial] showing unless it does cite materials of record." *Masters Ent. Grp., Inc. v. Aurich*, 2022 WL 2137090 (M.D. Tenn. June 14, 2022). If the movant does not make this required showing, the burden does not shift because "the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).

Here, Defendants contend Plaintiff does not have the expert evidence required to prove recklessness, and so her punitive damages claim must be dismissed. But they do not discuss the

expert's report or anticipated testimony at all. Defendants have to do more than *say* the evidence is insufficient; they have to *show* why that is the case. That their assertion is repeated many times does not increase its persuasive force. "[O]ne does not 'show' something to any degree whatsoever merely by asserting it." *Martinez v. First Class Interiors of Naples, LLC*, 2022 WL 1462965, at *7 n.9 (M.D. Tenn. May 6, 2022); *accord Benitez v. Tyson Fresh Meats, Inc.*, 2022 WL 1283087, at *13 n.37 (M.D. Tenn. Apr. 28, 2022). Again, Tennessee courts do not require expert proof of recklessness to support punitive damages in healthcare liability cases. But even if they did, Defendants would have to show how Plaintiff's proffered expert proof is lacking. And they have made no effort to do so here, nor do they address the remainder of the evidentiary record. Because Tennessee courts determine recklessness by evaluating the record as a whole, a bald assertion that Plaintiff's expert proof is insufficient does not demonstrate the absence of a genuine dispute of material fact as to punitive damages. *See Martinez*, 2022 WL 1462965, at *7 n.9. Accordingly, Defendants' Second Motion for Partial Summary Judgment [Doc. 83] will be **DENIED** as to Plaintiff's punitive damages demand.

**b. Informed Consent**

Defendant moves for summary judgment as to Plaintiff's claim regarding the adequacy of informed consent under T.C.A. § 29-26-118. [Doc. 83 a 4]. Plaintiff does not oppose Defendants' motion on this issue. Accordingly, Defendants' Motion [Doc. 83] is **GRANTED** as to any claim for lack of informed consent (Count 2), which will be **DISMISSED**.

**c. Policies and Procedures**

For her Count 3, Plaintiff asserts that AOMS failed to establish and implement adequate policies, failed to provide a safe surgical setting, and failed to provide appropriately educated and trained staff. [Doc. 37 at 10]. Defendant shows that this cause of action requires expert support,

and there is none, requiring its dismissal. [Doc. 83 at 5]. Plaintiff does not oppose summary judgment here either. [Doc. 97 at 5]. Defendants' Motion [Doc. 83] is therefore **GRANTED** as to the "policies and procedures" claim against AOMS (Count 3) [Doc. 37 at 10], which will be **DISMISSED.**

**d. Negligence Per Se**

Similarly, Plaintiff does not oppose Defendants' motion for summary judgment on her negligence per se claim (Count 4). [Doc. 97 at 6]. Defendants' Motion [Doc. 83] will be **GRANTED** in this regard, and Plaintiff's negligence per se claim **DISMISSED**.

**e. Alleged Errors in the Medical Record**

The next disputed issue is whether Plaintiff's potential recovery is limited by statutory caps on noneconomic damages or instead falls into a statutory exception. Tennessee law limits how much an injured plaintiff can recover for noneconomic damages. T.C.A. § 29-39-102. Those limitations do not apply if, *inter alia* "the defendant intentionally falsified, destroyed, or concealed records containing material evidence with the purpose of wrongfully evading liability." T.C.A. § 29-39-102(h)(2). In her Second Amended Complaint, Plaintiff alleges that certain of Mr. Steele's medical records were altered, falsified, or otherwise inaccurate, and cites the statutory exception in Subsection (h)(2) of T.C.A. § 29-39-102. [Doc. 37 at 12, n.1; *Id.* at ¶¶ 47-51].

In their motion for summary judgment, Defendants contend the SAC's allegations of medical record errors are insufficient to support punitive damages or a waiver of damages caps under Subsection (h)(2). [Doc. 83]. Defendants never discuss the evidentiary record, focusing solely on the adequacy of the pleadings. As best the Court can discern, Defendants argue the Complaint does not plead fraud with specificity. But Plaintiff asserts no claim for fraud. Recognizing there is no such claim, Defendants point to Plaintiff's Motion to Amend Complaint

[Doc. 31], in which she suggests that evidence produced in discovery "revealed that medical records may have been altered or falsified which . . . may relieve Plaintiff from the caps on both compensatory and punitive damages." [*Id.* at 3]. Defendants argue that because Plaintiff did not explicitly allege the medical record was modified for the purpose of avoiding malpractice liability, there must not have been any evidence to support such an allegation. Defendants conclude this somehow entitles them to summary judgment on the issue. Finally, Defendants argue that "record errors committed by employees of AMOS [sic] . . . cannot be attributed vicariously." [Doc. 83 at 7]. The object of attribution is not stated. Defendants cite irrelevant caselaw on this issue, or no caselaw at all.

Perhaps understandably, Plaintiff's Response [Doc. 97] struggles to make sense of Defendants' argument. [*Id.* at 8]. Plaintiff assumes that Defendants are challenging both the sufficiency of the pleadings under Federal Rule of Civil Procedure 9(b) and the sufficiency of the evidence as to intentional falsification. [*Id.*]. As to sufficiency, Plaintiff argues Rule 9(b) does not apply because she has not raised a claim for fraud, and in any event, a motion for summary judgment is not the correct procedural vehicle for challenging the sufficiency of a complaint. Plaintiff then sets out evidence regarding Mr. Steele's medical procedure and how it was documented.

In reply, Defendants reiterate that Rule 9(b) applies, citing caselaw related not to T.C.A. § 29-39-102(h)(2), but to tolling of the statute of limitations. [Doc. 100 at 2]. They claim to have challenged both the "vague nature" of Plaintiff's SAC and the lack of evidence to support the applicability of T.C.A. § 29-39-102 (h)(2). They fault Plaintiff for failing to come forward with evidence that Mr. Steele's medical records were intentionally altered. Defendants reason that

because the records were not modified after Mr. Steele was hospitalized, they cannot have been altered for the purpose of concealing potential liability.

Defendants' convoluted arguments fail for several reasons. First, Defendants have not carried their initial burden of demonstrating that no genuine issue of material fact exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Again, a moving party may discharge this burden either by producing evidence or by pointing out its absence. *Id.* at 325. Either way, the movant must make a preliminary showing that there is no genuine issue of material fact. "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448-49 (6th Cir. 2012).

Defendants here did neither. Their opening brief does not present evidence demonstrating the absence of a genuine issue of material fact as to falsification of the medical records, nor does it "point out" the absence of such evidence. It focuses solely on the sufficiency of the allegations. While Rule 56 allows the Court to consider the pleadings, that is not the focus of summary judgment: "While a motion to dismiss for failure to state a claim is a challenge to the sufficiency of the plaintiff's allegations, a motion for summary judgment is a challenge to the sufficiency of the plaintiff's proof." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (emphasis added). Defendants cite no proof at all. And as with most questions of intent, this is a fact-specific issue. With virtually no mention of the evidentiary record, Defendants cannot carry their initial burden on summary judgment. and consequently, Plaintiff did not become obligated to set forth specific facts showing a material, triable issue.

With such a slight connection to the evidentiary record, the Court could conceivably have converted the motion to one for judgment on the pleadings. But even a Rule 12(c) motion requires

far more than Defendants have presented here. Defendants' submission of a declaration with their reply brief is another barrier to conversion. And regardless of the procedural posture, it is never enough for a moving party to simply say that the other party cannot prevail. They have to explain why this is so, supporting their argument with citation to applicable caselaw and the allegations/record before the Court. Unsurprisingly, that is exactly how courts in Tennessee evaluate a contention that T.C.A. § 29-39-102(h)(2) does not apply: by evaluating the evidence and determining whether a reasonable jury could conclude the defendant "intentionally falsified, destroyed, or concealed" any identified record "with the purpose of wrongfully evading liability." *See, e.g., Perry v. Jenkins & Stiles, LLC*, 2025 WL 3025678, *6-7 (E.D. Tenn. Oct. 29, 2025) (discussing evidentiary record at length in evaluating motion for summary judgment on applicability of Subsection (h)(2)). Whatever the procedural vehicle, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (*quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). The Court is not obliged to sort through the allegations of the SAC to evaluate their sufficiency where Defendants have failed to do so. *Shorts v. Bartholomew*, 255 F. App'x 46, 50 (6th Cir. 2007) ("[W]e need not scour the record or make a case for a party who has failed to do so on his own behalf.").

Moreover, Defendants' argument rests on a faulty premise: that Plaintiff had to affirmatively plead an exception to the statutory limitation on noneconomic damages. Defendants simply assume that is the case, but provide no supporting argument or caselaw. To the contrary, "the demand for judgment does not control the proper relief to be awarded." *United States v.*

*Lesniewski*, 205 F.2d 802, 805 (2d Cir. 1953). Federal Rule of Civil Procedure 54 provides that while a default judgment must mirror what is demanded in the pleadings, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Absent more specific caselaw to the contrary, that general rule suggests that Plaintiff did not have to plead that Subsection (h)(2) applies in order to seek uncapped damages. *See Lincoln Elec. Co. v. Technitrol*, 718 F.2d 876, 879-80 (N.D. Ohio 2010) (denying summary judgment where plaintiff originally pleaded breach of one agreement and later argued a different agreement formed basis of breach of contract claim); *Adams v. Baker*, 2020 WL 406946, *4 (E.D. Tenn. Jan. 24, 2020) (granting motion to amend trial opinion and awarding prejudgment interest under Rule 54(c) despite plaintiff's failure to demand it in the complaint).

Relatedly, Defendants cite no caselaw for the proposition that Federal Rule of Civil Procedure 9(b)'s pleading standards for fraud apply to T.C.A. § 29-39-102(h)(2). Instead, Defendants rely on non-binding decisions from the Tennessee Court of Appeals that apply Tennessee's version of Rule 9 to pleading the doctrine of fraudulent concealment for statute of limitations purposes.[2] Applying that heightened standard makes far less sense here. Fraudulent concealment is a doctrine that tolls the statute of limitations, so it stands to reason that when a litigant presents her claim to the Court, she must explain with particularity the reason the claim was not timely filed. Subsection (h)(2), meanwhile lifts the cap on noneconomic damages "[i]f the

[2] The Court acknowledges that *Counts Co. v. Praters, Inc.*, 392 S.W.3d 80, 86-87 (Tenn. Ct. App. 2012), refers to fraudulent concealment as a "claim" that the plaintiff in that case "failed to properly plead." Regardless of its language, the court clearly analyzed fraudulent concealment as a doctrine that tolls the statute of limitations, not an independent claim for relief. Relying on an unreported case from the Tennessee Court of Appeals, the *Counts* court held that Tennessee Rule of Civil Procedure 9.02 required fraudulent concealment to be pleaded with particularity. Regardless, federal procedural law applies here and there is no claim or assertion of fraudulent concealment.

defendant intentionally falsified, destroyed, or concealed records containing material evidence with the purpose of wrongfully evading liability." T.C.A. § 29-39-102(h)(2). Most plaintiffs will not have the facts necessary to plead this exception applies until after discovery. In any event, the statute does not mention fraud, and if a Tennessee case has applied a fraud standard to pleading the exception, Defendants have not cited it.

In addition, Defendants had the opportunity to raise a Rule 12(b)(6) challenge to Plaintiff's allegations when the SAC was filed in April 2025 and did not do so. A Rule 12(b)(6) motion for failure to state a claim "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). A defendant cannot generally file an answer, wait until discovery is closed and the amendment deadline has passed, and only then move for dismissal based on a deficiency in the pleadings.

In their Reply [Doc. 100 at 3], Defendants purport to have challenged both the sufficiency of the allegations and the sufficiency of the proof. The Court has already explained that Defendants did not carry their initial burden on summary judgment. For avoidance of doubt, the Court finds that by failing to raise it in their motion or opening brief, Defendants have failed to place at issue the sufficiency of the evidence as to T.C.A. § 29-39-102(h)(2)'s application. Plaintiff nonetheless responded with ample citation to the record and argument regarding the allegedly falsified or altered medical records. In reply, Defendants for the first time discuss actual evidence that relates to their arguments, namely, the affidavit of Defendant Ivo Aaron Miller. Dr. Miller avers he reviewed the entries in the medical record for Mr. Steele's treatment on March 28, 2023, and determined that they were scanned the same day. [Doc. 100-1]. He further avers that the "scan date reflected in the system cannot be changed," and that "[t]he notes reflected in the chart were made

on March 28, 2023, and were not modified thereafter." [*Id.*]. According to Dr. Miller, "no changes were made after this office received notice that he had suffered a complication." [*Id.*].

Defendants see the entry date as definitive proof that the records were not altered or falsified "with the purpose of wrongfully evading liability." They argue the inaccuracies could not have been for an improper purpose because on the day of the procedure, no one knew that Mr. Steele would later suffer complications. The Court is not convinced. The procedure, by all accounts, did not go as planned. "Mr. Steele stopped breathing after initiation of the surgical procedure," which was "stopped to resuscitate the patient." [Doc. 38 at pg. 5, ¶ 30]. According to Dr. Miller, Mr. Steele suffered respiratory arrest, was unconscious, and had to be given two doses of reversal drugs (i.e. Narcan). [Doc. 97-3 at 2-3]. Dr. Miller described Mr. Steele's behavior at one point as appearing "to almost be having a little bit of a panic type of attack" as he recovered. [*Id.* at 4]. Mrs. Steele likewise testified that Mr. Steele was "flailing around" and "hollering," and that he was scared and "[t]he nurses was scared." [Doc. 97-9 at 2]. One can easily infer from this evidence that those involved with the procedure would have quickly realized it was not a success. Viewing the evidence and drawing all inferences from those facts in the light most favorable to Plaintiff as the non-moving party, there remains a genuine issue of material fact as to whether Defendants "intentionally falsified, destroyed, or concealed records containing material evidence with the purpose of wrongfully evading liability."

Finally, the "vicarious attribution" issue. Defendants say "[t]he exception from the damage caps under T.C.A. § 29-39-102(h)(2) cannot be vicariously attributed to Dr. Miller since he was a co-employee of the other involved providers." [Doc. 100 at 4]. As best the Court can tell, Defendants are arguing that any alleged falsification of the medical records by someone else "cannot be attributed vicariously" to Dr. Miller, or possibly to AOMS. They cite no caselaw that

might explain their position and cite only Dr. Miller's Extraction Summary, filed by Plaintiff. [Doc. 97-16].

Again, T.C.A. § 29-39-102(h)(2) does not create a claim for relief – it is about what damages are available, not attributing liability for those damages. To avoid the normal limits on noneconomic damages, Plaintiff must show that "the <u>defendant</u> intentionally falsified, destroyed or concealed records." T.C.A. § 29-39-102(h)(2) (emphasis added). As Plaintiff points out, Dr. Miller's "Extraction Surgery" notes state that anesthesia was administered and directs the reader to the anesthesia record "for details." [Doc. 97-16]. It similarly indicates the surgery was "suspended secondary to airway issues" which are not described, again directing the reader to "see anesthesia record and recovery record." [*Id.*]. Defendants present no caselaw on the issue, and the Court cannot say that these isolated facts, standing alone, prove that Dr. Miller was not involved in any alleged falsification of the medical record.

The Court cannot discern what other relief Defendants may seek on this issue. Suffice to say that to avoid statutory caps on noneconomic damages, Plaintiff will have to demonstrate that T.C.A. § 29-39-102(h)(2) applies. All the Court finds today is that Defendants have failed to show that it does not.

## IV. MOTION FOR SUMMARY JUDGMENT ON LIABILITY [DOC. 80]

Defendants' Motion for Summary Judgment on Liability [Doc. 80] was entirely contingent on the Court's sustaining their Objection [Doc. 68] to Magistrate Judge Dumitru's Order [Doc. 68] regarding waiver of the locality rule. The Court has since overruled the Objection. [Doc. 85]. The Motion for Summary Judgment on Liability [Doc. 80] is **MOOT** and will therefore be **DENIED**.

## V. CONCLUSION

Accordingly, Defendants' Second Motion for Partial Summary Judgment [Doc. 83] is **GRANTED IN PART** as to Plaintiff's Informed Consent claim (Count 2), Policies and Procedures claim (Count 3), and Negligence Per Se claim (Count 4), which claims are **DISMISSED**. The Motion [Doc. 83] is **DENIED** as to all remaining relief requested.

Defendants' Motion for Summary Judgment on Liability [Doc. 80] is **DENIED AS MOOT**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**